## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Nathaniel Forthun, Special Agent with Homeland Security Investigations, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of the residential property located at 16013 W Moreland Street, Goodyear, Arizona 85338 (hereafter Target Residence), to include the curtilage, any and all outbuildings, storage sheds, safes, other containers at Target Residence or on its curtilage, vehicles at the Target Residence including those registered to residents of Target Residence which are parked on the street near Target Residence. Target Residence is described as a single story, tan stucco home in a residential neighborhood.  The Target Residence is more fully described in Attachment A of this search warrant application.

2.      The purpose of this application is to seize evidence, more particularly described in Attachment B of this search warrant application, of violations of 8 U.S.C. § 1324(a)(1)(A)(v)(I), conspiracy to commit alien smuggling, 8 U.S.C. § 1324(a)(1)(A)(ii), transportation of illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), harboring illegal aliens, 18 U.S.C. § 1956(h), conspiracy to commit money laundering.

3.      Your affiant is a criminal investigator and law enforcement agent of the United States who is empowered by federal law to conduct investigations and make arrests for offenses enumerated in Titles 8, 18, 19, 21, and 31 of the United States Code.

4.      Your affiant is a Special Agent with Homeland Security Investigations (HSI) and assigned to the Assistant Special Agent in Charge (ASAC) Sells, Arizona office. Your affiant has been a special agent with HSI since December of 2018. During this time, your affiant has been assigned to a human smuggling investigations group and has conducted and assisted investigations involving human smuggling, weapons offenses, sex offenses, violent crimes, and immigration violations.

5.      Prior to becoming a special agent with HSI, your affiant was employed by Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) as a deportation officer (DO) from July 2016 to December 2018, and by the United States Border Patrol (USBP) as a patrol agent (BPA) from August 2013 to July 2016. As a DO, your affiant interviewed illegal and criminal aliens to identify immigration and criminal violations, arrested illegal aliens, and managed many types of casework relating to immigration proceedings. Your affiant also served as an intelligence officer while a DO at ICE ERO, tasked with interviewing illegal aliens to obtain information regarding smuggling organizations and transnational gangs. As a BPA, your affiant was assigned to the Weslaco Border Patrol Station, Rio Grande Valley Sector, as a patrol agent and a collateral intelligence agent. As a patrol agent, your affiant conducted enforcement operations to deter, interdict, and seize individuals and contraband seeking to enter, or which had previously entered the United States in violation of U.S. immigration laws and customs regulations. While assigned as a collateral intelligence agent, your affiant conducted intelligence interviews with criminal and illegal aliens and assisted in the investigation of human and narcotics smugglers, gaining experience and knowledge of the operational techniques of these organizations.

6.      Your affiant has attended and completed the Basic Course for Border Patrol Agents, the Criminal Investigator Training Program, and the HSI Special Agent Training Program at the Federal Law Enforcement Training Centers in Artesia, New Mexico and Glynco, Georgia. Your affiant has a Bachelor of the Arts in Criminal Justice from Thomas Edison State College. Your affiant has received and continues to receive specialized training in constitutional criminal procedure, drug identification and recognition, interview and interrogation techniques, search and seizure, evidence collection, surveillance operations, and standard operating procedures pertaining to various transnational criminal organizations. Your affiant received this knowledge from training courses, other law enforcement officers/agents conducting human and narcotics smuggling investigations, as well as from criminal defendants and suspects.

7.      Throughout his career, your affiant has performed various tasks which include, but are not limited to: (a) functioning as a case agent, which entails the management of investigations in several investigative program areas to include human smuggling, narcotics smuggling, violent crimes, financial crimes, and immigration violations; (b) conducting research in both open source and law enforcement sensitive databases and applications on individuals suspected to be involved

in criminal activity; (c) performing physical surveillance and thereby observing and recording movements of persons suspected of various criminal activities; (d) interviewing witnesses and cooperating individuals, and (e) testifying before Grand Juries.

8.      Based on his background, training, and experience, your affiant knows that individuals who are involved in human smuggling and trafficking engage in the following techniques, tactics, and procedures:

a. Use cellular telephones to arrange, coordinate, and monitor criminal activities including communicating with smugglers, arrangers, and other transporters or drivers to coordinate their operations. They also use cellular telephones to communicate with the same individuals during counter surveillance activities, and to warn co-conspirators of the presence of law enforcement or other obstacles to their plans.

b. Maintain ledgers, both physically and electronically, to document the receipt and payment of monies. It is common for fees to be wired into bank accounts or directly from one person to another via money transfer services such as Western Union and Money Gram. These ledgers may also identify the recipients or senders of these funds, either by name or by other identifying information, such as phone or bank account numbers.

c. Create and maintain documents to indicate the number of aliens smuggled, the cost or price of the alien smuggling, the ultimate destination of the alien, and could outline the travel arrangements made to transport or move the alien to his final destination.

d. Retain payments in the form of cash or other monetary instruments, such as money orders or checks. Often, depending on the specific criminal scheme being employed, these payments may be in various states of liquidity. These payments can be the smuggler's proceeds of the criminal enterprise or monies which they use to pay drivers and others involved in the smuggling venture, as well as to buy food and other necessary supplies for the aliens under their control.

e. Possess evidence belonging to previous victims, such as personal effects, photographs, or identifying documents. These possessions are sometimes retained to intimidate and control potential witnesses by implying they could be located again at a later time.

9.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this investigation. The information contained in this affidavit is based upon review of various official reports, conversations with other federal agents and law enforcement officers, financial records, and your affiant's personal observations, training, and knowledge.

## PROBABLE CAUSE

10.      In June of 2018, Homeland Security Investigations (HSI) opened an investigation into the CARDENAS Alien Smuggling Organization (ASO). Tony CARDENAS (T. CARDENAS) had been identified as an alien smuggler who worked with a defendant from a previous investigation. HSI and Internal Revenue Service-Criminal Investigations' (IRS-CI) work in this investigation showed T. CARDENAS was the leader of the CARDENAS ASO and he coordinated the pickup, housing, and transportation of illegal aliens from U.S. border regions to the aliens' end destinations in the United States.  From September 2019 to September 2020, HSI received multiple Title III orders from the U.S. District Court for the District of Arizona. During that period of time and pursuant to court orders, HSI intercepted multiple phones from multiple targets of this investigation. The main target of this investigation was Tony CARDENAS (T. CARDENAS) who HSI intercepted on a cellular phone with a phone number of (623) 261-0080 (hereafter TD-1). Through wire and electronic interceptions, financial analysis, and other investigative methods, HSI and IRS-CI tracked T. CARDENAS' alien smuggling and money laundering.  On November 17, 2021, T. CARDENAS was indicted in the District of Arizona along with nineteen other persons for alien smuggling and/or money laundering offenses.

### Existence of Accounting Information

11.      Between September 2019 and September 2020, HSI intercepted T. CARDENAS on TD-1 numerous times discussing the accounting and logistical nature of his alien smuggling business. T. CARDENAS discussed financial accounts.  He specifically discussed what was owed to him and what he owed other people.  During intercepted communications, T. CARDENAS was asked to send other smugglers information on specific people being moved to specific places and he discussed receiving payment on behalf of others and forwarding that payment to them.  Intercepted communications also included T.CARDENAS discussing recording email passwords and US and

Mexican bank account information in "Notes" on his cellphone; losing track of what was owed and a person identified as "Oaxaco" not having the notebook; Oaxaco losing the list; sending a list to determine which aliens had paid and could be moved; accounting for money and referencing a list; a list of aliens; and receiving accounting information (names of aliens and prices) via WhatsApp. The above conversations indicate that T. CARDENAS' ASO maintained some form of ledgers or accounting information to track the movement of aliens and monies paid for services rendered. Based on your affiant's training and experience, it is a common practice for alien smuggling organizations to maintain those records in an area under the control of the organization such as at a leader's home, or at a stash house. The above communications indicate that T. CARDENAS was in possession of some of these records while HSI was intercepting T. CARDENAS.

**Storage of Money at 16013 W. Moreland Street**

12.     On June 7, 2020, HSI intercepted T. CARDENAS using TD-1 speaking with indicted CARDENAS ASO member Martin CARDENAS (T. CARDENAS' father) about an alien smuggling event. T. CARDENAS told Martin CARDENAS that "…I have the money there…at the house, so you can pay them…" Martin CARDENAS asked if T. CARDENAS would keep the aliens there at T. CARDENAS' house.  T. CARDENAS said no and that he would keep them at the apartment.

13.     On July 30, 2020, HSI intercepted T. CARDENAS using TD-1 speaking with the user of Mexican number +52-3315402932. T. CARDENAS asked the man to assist T. CARDENAS while T. CARDENAS confronted T. CARDENAS' wife about stealing money from T. CARDENAS.

14.     On September 1, 2020, HSI intercepted T. CARDENAS using TD-1 speaking with Martin CARDENAS about concerns that T. CARDENAS' wife would search T. CARDENAS' home for money and then abscond with the money. The call indicated the money was stored at T. CARDENAS' home (Target Residence). HSI and IRS-CI established that the Target Residence is located at 16013 W. Moreland St, Goodyear, Arizona. HSI has verified that T. CARDENAS still resides at Target Residence through surveillance and utility records.

**Continuity of Operations**

15.     Between September 2019 and September 2020, HSI and IRS-CI were able to track the activity of T. CARDENAS' ASO through phone intercepts and financial analysis. All phone interceptions stopped in September 2020. However, HSI and IRS-CI have been able to document the continued activity of T. CARDENAS' ASO throughout 2021 by 1) continued communication between T. CARDENAS and persons known to HSI to be involved in alien smuggling, 2) continued encounters between members of the ASO and law enforcement during alien smuggling events, and 3) continued financial transactions by the ASO. Based on your affiant's training and experience, showing a continuity of alien smuggling operations from September 2020 until the present time indicates that other CARDENAS ASO practices—such as storing money at the Target Residence and T. CARDENAS having possession of ledgers/accounting information—also continues.

**Continued Communications**

16.     Between September 2019 and September 2020, HSI intercepted T. CARDENAS conducting his alien smuggling business via TD-1. To verify T. CARDENAS was still using this phone number and to determine if T. CARDENAS was still in communications with members of the CARDENAS ASO, HSI subpoenaed phone tolls and subscriber information from AT&T for TD-1. As of November 25, 2021, subscriber information showed TD-1 was subscribed to T. CARDENAS with an address of 16013 W. Moreland Street, Goodyear, Arizona 85338 (Target Residence).

17.     A review of phone tolls for TD-1 show TD-1 was used to contact indicted CARDENAS ASO member Gabriella SHIRLEY's phone 154 times between September 7, 2021, and November 17, 2021. TD-1 was in contact with indicted CARDENAS ASO member Tracey Cook's phone seventy-six times between September 7, 2021, and November 15, 2021. TD-1 was in contact with a known alien smuggler "Rafa"'s phone eighty-two times between September 7, 2021, and November 18, 2021.  Rafa was identified as an alien smuggler working with T. CARDENAS via interceptions on TD-1 between September 2019 and September 2020.  TD-1 was in contact with

indicted CARDENAS ASO member Yolanda GONZALEZ' phone thirty-one times between October 6, 2021, and October 9, 2021.

18.     In intercepted communications between September 2019 and September 2020, HSI intercepted T. CARDENAS repeatedly stating he used WhatsApp for his alien smuggling business. T. CARDENAS was intercepted on TD-1 directing aliens to use WhatsApp so he could remotely guide them via WhatsApp.  T. CARDENAS also requested other smugglers send him smuggling information via WhatsApp.  T. CARDENAS even stated he does all his work through WhatsApp. HSI was able to verify that T. CARDENAS' WhatsApp number was the same phone number as TD-1 by examining the profile picture for the WhatsApp number. The profile picture was a picture of T. CARDENAS. HSI obtained a pen register/trap and trace on T. CARDENAS' WhatsApp number and began receiving data in early December 2021. HSI found T. CARDENAS' WhatsApp number was actively communicating with alien smugglers who had been identified as such via interceptions on TD-1.

19.     Between September 2019 and August 2020, T. CARDENAS was intercepted using TD-1 at least seventy-eight times communicating with Mexican number +52-9847455221. This phone number was known to be utilized by a person known as "Rafa." These intercepted communications showed Rafa was an alien smuggler working with T. CARDENAS. A WhatsApp pen register showed that T. CARDENAS' number was in contact with +52-9847455221 at least forty times between December 5th and December 7th, 2021.

20.     Between September 2019 and July 2020, T. CARDENAS using TD-1 was intercepted at least ten times communicating with Mexican number +52-3310093377. This phone number was used by an unidentified male (UM). In these interceptions, T. CARDENAS offered to hire UM to deliver aliens around the United States, discussed whether T. CARDENAS had received more deposits (payments for smuggling aliens), and discussed coming outside to meet UM. A WhatsApp pen register showed that T. CARDENAS' number was in contact with +52-3310093377 at least twelve times on December 1, 2021.

21.     Between May 2020 and June 2020, T. CARDENAS using TD-1 was intercepted two times communicating with Mexican number +52-6371084501. This phone number was used by an unidentified male (UM). These interceptions show the user of +52-6371084501 contacted T.

CARDENAS about smuggling aliens into the United States. A WhatsApp pen register showed that T. CARDENAS' number was in contact with +52-6371084501 at least five times on December 1, 2021.

22.     Between October 2019 and August 2020, T. CARDENAS using TD-1 was intercepted at least forty-five times communicating with +52-3315402932. This phone number was used by a man later identified as Marvin CARDENAS-Munoz. Intercepted communications showed T. CARDENAS and CARDENAS-Munoz having social conversations.   T. CARDENAS and CARDENAS-Munoz discussed CARDENAS-Munoz taking his cut of a larger sum of money and how CARDENAS-Munoz owed T. CARDENAS money from the day before.  They also discussed how CARDENAS-Munoz had the numbers for T. CARDENAS and inquired about meeting to provide T. CARDENAS this information. A WhatsApp pen register showed that T. CARDENAS' number was in contact with +52-3315402932 at least six times on December 1, 2021.

23.     The WhatsApp pen register/trap and trace also showed T. CARDENAS was in contact with US and Mexican numbers which were not found in the interceptions of TD-1 between September 2019 and September 2020. This is consistent with T. CARDENAS' statements that he used WhatsApp to guide aliens through the desert.

**Alien Smuggling Encounters after September 2020**

24.     On October 7, 2020, Maria Elena LOZOYA (M. LOZOYA), was arrested for alien smuggling. Consent searches of M. LOZOYA and one of the aliens' phones found M. LOZOYA and one of the aliens were in extensive communication with T. CARDENAS regarding this alien smuggling event.

25.     On October 23, 2020, T. CARDENAS was detained by Marana Police Department for a civil traffic violation. T. CARDENAS did not immediately pull over when Marana Police activated their emergency equipment and signaled T. CARDENAS to pull over. When T. CARDENAS did pull over, four people absconded from the vehicle. T. CARDENAS acknowledged that four people ran from the vehicle. After a canine alerted to the vehicle, Marana Police officers searched the vehicle and found several camouflage backpacks in the trunk. Based on your affiant's training and experience, the facts of this event indicate this was an alien smuggling attempt.

26.        On April 18, 2021, federal law enforcement detained Melissa CARDENAS, T. CARDENAS sister and an indicted member of the CARDENAS ASO, for alien smuggling. United States Border Patrol took seven illegal aliens into custody, but released Melissa CARDENAS.

### Financial Transactions

27.        Between September 2019 and September 2020, HSI and IRS-CI obtained numerous financial records from multiple sources showing T. CARDENAS and his organization sent, received, and laundered money in support of T. CARDENAS' alien smuggling business. Subpoenaed money service business (MSB) records show that T. CARDENAS continued this pattern of financial activity in support of his alien smuggling business throughout 2021.

28.        Ria Financial provided a response dated December 6, 2021, showing all MSB transactions for which T. CARDENAS was listed as either a sender or a recipient between January 1-November 22, 2021. There were ten transactions to which T. CARDENAS was a party dated from January 2021 to November 2021. These transactions were consistent with previous MSB transactions T. CARDENAS used to send and receive money for his alien smuggling business in that the amounts were similar, the transactions sent to T. CARDENAS were from non-familial hispanic last names, and the transactions sent to T. CARDENAS were from multiple states outside of Arizona. The money T. CARDENAS sent was to a Tucson, Arizona area man (Jeffery A. Myers) whom United States Border Patrol previously encountered attempting to resupply illegal aliens traveling through the desert.

29.        Western Union provided a response dated November 23, 2021, showing all MSB for which T. CARDENAS was listed as a recipient between January 1-November 22, 2021. There were four transactions which listed T. CARDENAS as the recipient dated from January 2021 to April 2021. These transactions were consistent with previous MSB transactions in which T. CARDENAS received money for his alien smuggling business in that the amounts were similar, the transactions sent to T. CARDENAS were from non-familial hispanic last names, and the money sent to T. CARDENAS was from multiple states outside of Arizona.

30.        Data obtained from MoneyGram showed T. CARDENAS was listed as the sender or recipient of two MSB transactions between February 2021 and August 2021. These transactions were consistent with previous MSB transactions T. CARDENAS used to send and receive money

for his alien smuggling business in that the amounts were similar, the transaction sent to T. CARDENAS was from a non-familial hispanic last name, and the money sent to T. CARDENAS was from a state outside of Arizona. The money T. CARDENAS sent was again to a Tucson, Arizona area man (Fernando CONTRERAS) and was a similar amount of money to the payment(s) T. CARDENAS sent Jeffery A. Myers.

31.     IRS-CI obtained information from a Grand Jury subpoena of bank records that Melissa CARDENAS received payments in 2021. These payments were indicative of continued money laundering and alien smuggling activity. From February 2021 to April 2021, Melissa CARDENAS received multiple out-of-state deposits into her bank account, and quickly thereafter M. CARDENAS withdrew the majority of the money from her account in Arizona.

## **CONCLUSION**

32.     Based upon the foregoing, your affiant submits that there is sufficient probable cause to believe the Target Residence at 16013 W. Moreland Street, Goodyear, Arizona 85338 contains evidence of the crime of 8 U.S.C. § 1324(a)(1)(A)(v)(I), conspiracy to commit alien smuggling, 8 U.S.C. § 1324(a)(1)(A)(ii), transportation of illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), harboring illegal aliens, and 18 U.S.C. § 1956(h), conspiracy to commit money laundering.

NATHANIEL M FORTHUN
Digitally signed by NATHANIEL M FORTHUN
Date: 2021.12.10 15:18:19 -07'00'

Nathaniel Forthun, Special Agent
Homeland Security Investigations, Affiant

Electronically submitted, subscribed
and telephonically sworn

Honorable Leslie Bowman
United States Magistrate Judge
District of Arizona

21-03405MB

## ATTACHMENT A

### Description of the Premises to be Searched

The description of the residence located at 16013 W. Moreland Street, Goodyear, Arizona 85338 is a single-story stucco home. The major color of Target Residence is light tan with darker brown and stone accents. A single window and the garage door face the street. The entry door of Target Residence is located on the west side of the house (left side while facing the house). This search warrant authorizes the search of the Target Residence to include the curtilage, any and all outbuildings, storage sheds, safes, other containers at Target Residence or on its curtilage, vehicles at the Target Residence including those registered to residents of Target Residence which are

parked          on          the          street          near          Target          Residence.



## ATTACHMENT B

## DESCRIPTION OF PROPERTY TO BE SEARCHED/SEIZED

The property to be seized is evidence of offenses in violation of Title 8 U.S.C. § 1324, and Title 18 U.S.C. § 1956(h) including, but not limited to the following:

1.      Documents showing possession, dominion, and/or control of premises located inside Target Residence to be searched, including utility statements, telephone statements, correspondence with other persons or entities, and rental or lease agreements relating to the subject premises to be searched;

2.      Immigration and identification documents from the United States or any foreign government;

3.      Cellular telephones and any other portable electronic devices, to include tablet computers, with the capability of storing information and wirelessly communicating with other similar devices;

4.      Records, including but not limited to, books, ledgers, notes, correspondence, lists, receipts, transportation tickets, credit card statements and receipts, rental receipts, hotel receipts, meal receipts, deposit and investment records, telephone tolls, telegrams, financial transaction records, money orders, and other papers which evidence the obtaining, secreting, transfer and/or concealment of assets;

5.      Address and/or telephone books and papers reflecting names, addresses and/or telephone numbers or banking information of co-conspirators and others involved in the transportation, concealment, or harboring of smuggled aliens or involved with the proceeds of such activities;

6.      Financial records that are evidence of payments made to alien smugglers or received from smuggled aliens and their sponsors; and

7.      United States and/or foreign currency in amounts over $1,000.